

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-17-00124-CV

IN THE INTEREST OF D.W.G.K. AND S.F.R.K., MINOR CHILDREN

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. FA-16-42653

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

# O P I N I O N

## I.      Factual and Procedural Background

Based on an intake received by the of Texas Department of Family and Protective Services (the Department) of possible methamphetamine use by Mother and Father, a lack of utilities in the home, the home's allegedly filthy condition, and D.W.G.K.'s repeated absences from school, the Department instituted these proceedings, ultimately leading to a petition to terminate Mother's and Father's parental rights. After a jury trial, the trial court terminated Mother's parental rights pursuant to grounds (D), (E), (J), (N), (O), and (P) of Section 161.001 the Texas Family Code. The trial court also terminated Father's parental rights pursuant to grounds (D), (E), (F), (J), (N), (O), and (P) of Section 161.001 of the Texas Family Code. The trial court found that termination was in the children's best interests as to both parents. *See* TEX. FAM. CODE ANN. §161.001(b)(1)(D), (E), (F), (J), (N), (O), (P), (b)(2) (West Supp. 2017). Neither parent challenged the sufficiency of the evidence supporting these findings.

In this accelerated appeal, Father complains that D.W.G.K. received ineffective assistance of counsel, requiring a new trial at which the children should be appointed separate counsel. Because Father lacks standing to assert an ineffective assistance of counsel claim on behalf of D.W.G.K., we affirm the trial court's judgment as to Father. In her sole point of error, Mother claims that the trial court's refusal to strike the Department's witnesses resulted in a denial of due process of law, requiring reversal of the termination order.[1] Because we find that the Department

---

[1]Mother's sole point of error purports to include this same complaint on behalf of Father. However, Father is represented by different counsel, has filed a brief on appeal, and has not raised this point of error. Consequently, we address this issue solely as it pertains to Mother.

failed to establish that Mother was not unfairly surprised or unfairly prejudiced by its failure to answer Mother's discovery requests before trial, we find that the trial court erred in overruling Mother's motion to strike the Department's witnesses. *See* TEX. R. CIV. P. 193.6. However, because we find that the testimony of the untimely disclosed witnesses is cumulative of the testimony of witnesses to whom Mother makes no objection, we find that the trial court's error was harmless. Accordingly, we affirm the trial court's judgment as to Mother as well.

## II. Analysis

### A. Father Lacks Standing to Assert an Ineffective Assistance of Counsel Claim on Behalf of D.W.G.K.

In his sole point of error, Father contends that D.W.G.K. received ineffective assistance of counsel because his attorney ad litem did not represent D.W.G.K.'s "expressed objectives of representation." TEX. FAM. CODE ANN. § 107.004(a)(2) (West Supp. 2017).[2] D.W.G.K., who was eight years old at the time of trial, responded to questions from Father's attorney:

> Q. . . . . Do you remember living with your biological parents?
>
> A. Yes.
>
> Q. . . . . And do you know how old you were when you left your biological parents?
>
> A. No.

---

[2]This Section provides, in pertinent part,

> (a) Except as otherwise provided by this chapter, the attorney ad litem appointed for a child shall, in a developmentally appropriate manner:
> (1) advise the child;
> (2) represent the child's expressed objectives of representation and follow the child's expressed objectives of representation during the course of litigation if the attorney ad litem determines that the child is competent to understand the nature of an attorney-client relationship and has formed that relationship with the attorney ad litem . . . .

TEX. FAM. CODE ANN. § 107.004(a)(1), (2) (West Supp. 2017).

Q.      . . . . Do you remember doing things with your biological parents?

A.      A little bit.

        . . . .

Q.      . . . . Do you miss them?

A.      Yes.

Q.      . . . . Do you want to see them again?

A.      I'd like to stay in contact with them.

Q.      You would.  What kind of things would you like to be able to do to stay in contact with them?

A.      Say to -- hello to them.

Q.      . . . . And would you like them to be able to contact you, too?

A.      Yes.

Q.      What kind of things -- how would you like them to be able to contact you?

A.      Say -- call them and say hello and I love you.

Q.      . . . . And would you like to be able to talk to them on the phone?

A.      Yes.

        . . . .

Q.      . . . . Would you . . . like to be able to actually see your parents?

A.      Yes.

Q.      . . . . Would you like to visit with them?

A.      Yes.

4

. . . .

Q.      . . . . Do you like where you're living now?

A.      Yes.

Q.      . . . . So would you like to live where you are now but still be able
to see your biological parents?

A.      Yes.

Prior to closing arguments, the children's attorney ad litem informed the court that she would need to re-examine her position of alignment with the Department, given D.W.G.K.'s testimony. The following morning, the children's attorney ad litem determined to continue to advocate for termination based on "all of [her] interactions and conversations with [her] clients throughout th[e] case, as well [as] D.K.'s testimony that he said he wanted to live where he [was] permanently." Further, counsel took into consideration that only the question of termination was before the court. Father claims this decision rendered counsel's representation of the children ineffective.

The Department contends that, under the doctrine of virtual representation, Father does not have standing to raise an ineffective assistance of counsel claim on behalf of D.W.G.K. We agree. Standing is implicit in the concept of subject-matter jurisdiction, which is never presumed and cannot be waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993). A party "may not complain of errors that do not injuriously affect it or that merely affect the rights of others." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000). "Courts, including this Court, have applied this rule in parental-[rights] termination cases and have held

5

that a parent does not have standing to complain about alleged deficiencies in the representation of his children or his spouse." *J.R. v. Tex. Dep't of Family & Protective Servs*., No. 03-15-00108-CV, 2015 WL 4603943, at *3 (Tex. App.—Austin July 30, 2015, pet. denied) (mem. op.); *see, e.g.*, *A.E. v. Tex. Dep't of Family & Protective Servs.*, No. 03-14-00414-CV, 2014 WL 7458731, at *5 (Tex. App.—Austin Dec. 23, 2014, no pet.) (mem. op.) (father lacked standing to complain about trial court's decision to proceed when children's attorney ad litem was not present at beginning of hearing); *S.M.M. v. Tex. Dep't of Family & Protective Servs*., No. 03-12-00585-CV, 2013 WL 812088, at *3 n.5 (Tex. App.—Austin Feb. 26, 2013, no pet.) (mem. op.) (mother in parental-rights termination case lacked standing to complain about trial court's failure to appoint counsel to father); *In re T.N.*, 142 S.W.3d 522, 524 (Tex. App.—Fort Worth 2004, no pet.) (mother lacked standing to complain about children's attorney's performance on children's behalf or on her own behalf).

We addressed this issue most recently in *In re J.E.G*., No. 06-17-00064-CV, 2017 WL 4448547, at *5 (Tex. App.—Texarkana Oct. 6, 2017, pet. denied) (mem. op.). There, after her parental rights were terminated, Nancy appealed from the termination order claiming that the children's attorney ad litem failed to provide effective assistance of counsel. *Id*. at *2. Nancy claimed that, pursuant to the doctrine of virtual representation, she had standing to complain of the children's attorney ad litem's alleged ineffectiveness because the ad litem's "representations at trial were more aligned with the Department's position favoring termination of her parental rights, rather than with the Children's desires to be reunited with her." *Id*. at *5.

6

We determined that the record failed to support Nancy's claim that the children desired to be reunited with her and that, even if it did, "there exist[ed] overwhelming evidence that Nancy and the Children d[id] not have identical interests." *Id.* We recognized that the "[c]hildren's only interest [was] in finding a safe, loving, and permanent family situation in which to live." *Id.* Nancy's interest, however, was to maintain parental rights and to be reunited with the children, despite the existence of evidence demonstrating she subjected the children to endangering conduct and an endangering environment. *Id.* Consequently, Nancy's interests were not aligned with those of the children, and she therefore lacked "standing pursuant to the doctrine of virtual representation to proceed with her ineffective assistance of counsel claim against the Children's attorney ad litem." *Id.* at *6; *see In re B.M.*, No. 13-17-00467-CV, 2017 WL 5953098, at *9 (Tex. App.—Corpus Christi Nov. 30, 2017, pet. denied) (mem. op.) (Mother's interest not aligned with those of children, whose interest was to find safe, loving, and permanent family).

Here, we likewise conclude that Father does not have standing under the doctrine of virtual representation to claim D.W.G.K. did not receive effective assistance of counsel. This holding is consistent with that of the majority of our sister courts who have addressed this issue. *T.N.*, 142 S.W.3d at 524; *J.R.*, 2015 WL 4603943, at *3; *In re S.I.-M.G.*, No. 02-12-00141-CV, 2012 WL 5512372, at *14 (Tex. App.—Fort Worth Nov. 15, 2012, no pet.) (mem. op.); *In re G.F.*, No. 09-11-00316-CV, 2012 WL 112549, at *1 (Tex. App.—Beaumont Jan. 12, 2012, no pet.) (mem. op.). Even in cases in which the child desired reunification, of which there is scant or no evidence here, courts have held that parents lack standing to complain on appeal about the effectiveness of the

7

child's attorney ad litem. *B.M.*, 2017 WL 5953098, at *8–9; *J.R.*, 2015 WL 4603943, at *3; *S.I.-M.G.*, 2012 WL 5512372, at *14; *G.F.*, 2012 WL 112549, at *1.

Father and D.W.G.K. do not have identical interests. D.W.G.K.'s interest was to find a "safe, loving, and permanent family situation in which to live." *J.E.G.*, 2017 WL 4448547, at *5. Father's interest, however, was to prevent termination of the parent-child relationship, despite the jury's finding that termination of Father's rights was supported by clear and convincing evidence under grounds (D), (E), (F), (J), (N), (O), and (P) of Section 161.001 of the Texas Family Code and the trial court's finding that termination was in D.W.G.K.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (F), (J), (N), (O), (P), (b)(2). Father did not challenge the sufficiency of the evidence supporting these findings. Because Father's interests are not aligned with those of D.W.G.K., Father lacks standing to challenge the effectiveness of the attorney ad litem's representation.

We overrule Father's sole point of error.

### B. Testimony of Untimely Disclosed Witnesses

In her sole point of error on appeal, Mother complains that certain witnesses who testified on behalf of the Department should not have been permitted to do so, in light of the Department's failure to timely disclose the names of those witnesses. Mother, therefore, contends that she failed to receive a fair trial and asks that we reverse the termination order and remand for a new trial.

#### 1. Rule 193.6 of the Texas Rules of Civil Procedure

Under Rule 193.6 of the Texas Rules of Civil Procedure, when a party fails to timely supplement a discovery response, the untimely disclosed evidence may be excluded. TEX. R. CIV.

8

P. 193.6(a); *see Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex. 1992). Exclusion is mandatory and automatic unless the court finds that there was good cause for the failure to amend or supplement, or the failure will not unfairly surprise or prejudice the other party. TEX. R. CIV. P. 193.6(a); *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 297–98 (Tex. 1986) (per curiam); *Good v. Baker*, 339 S.W.3d 260, 271 (Tex. App.—Texarkana 2011, pet denied). The party seeking to introduce the evidence has the burden of establishing good cause or lack of unfair surprise or prejudice. TEX. R. CIV. P. 193.6(b); *Baker*, 339 S.W.3d at 271. The trial court has discretion to determine whether the offering party has met its burden to show good cause or lack of unfair surprise or prejudice, *Baker*, 339 S.W.3d at 271, and the record must support such finding, TEX. R. CIV. P. 193.6(b).[3]

The purposes of Rule 193.6 are threefold: (1) to promote responsible assessment of settlement, (2) to prevent trial by ambush, and (3) to give the other party the opportunity to prepare rebuttal to expert testimony. *See In re Kings Ridge Homeowners Assoc., Inc.*, 303 S.W.3d 773, 783 (Tex. App.—Fort Worth 2009, orig. proceeding) (first two purposes) (citing *Alvarado*, 830

---

[3]Rule 193.6 of the Texas Rules of Civil Procedure provides,

    **(a)**     ***Exclusion of Evidence and Exceptions.*** A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:

        (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

        (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

    **(b)**     ***Burden of Establishing Exception***. The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness. A finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record.

TEX. R. CIV. P. 193.6 (emphasis added).

S.W.2d at 913–14); *Norfolk S. Railway Co. v. Bailey*, 92 S.W.3d 577, 581 (Tex. App.—Austin 2002, no pet.) (third purpose) (citing *Exxon Corp. v. W. Tex. Gathering Co.*, 868 S.W.2d 299, 305 (Tex. 1993)). Accordingly, in order to establish the absence of unfair prejudice, the party seeking to call an untimely disclosed witness or introduce untimely disclosed evidence must establish that, notwithstanding the late disclosure, the other party had enough evidence to reasonably assess settlement, to avoid trial by ambush, and to prepare rebuttal to expert testimony.

Although Rule 193.6 is applicable to all civil cases, parental-rights termination cases are unique among civil cases. As we have noted previously,

> the natural right existing between parents and their children is of constitutional dimensions. *In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980); *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976). Indeed, "involuntary termination of parental rights involves fundamental constitutional rights." *In re G.M.*, 596 S.W.2d at 846. This natural parental right has been characterized as "essential," "a basic civil right of man," and "far more precious than property rights." *See Stanley v. Illinois*, 405 U.S. 645, 651 (1972). The termination decree is complete, final, irrevocable and divests for all time that natural right as well as all legal rights, privileges, duties and powers with respect to each other except for the child's right to inherit. *Wiley*, 543 S.W.2d at 352; TEX. FAM. CODE ANN. § 15.07 (Vernon 1975). Moreover, the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights. *Santosky v. Kramer*, 455 U.S. 745, 747 (1982); *Richardson v. Green*, 677 S.W.2d 497, 500 (Tex. 1984). Consequently, termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent. *See Cawley v. Allums*, 518 S.W.2d 790, 792 (Tex. 1975); *Heard v. Bauman*, 443 S.W.2d 715, 719 (Tex. 1969).

*In re K.D.*, 471 S.W.3d 147, 167 (Tex. App.—Texarkana 2015, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20–21 (Tex. 1985)). Given the constitutional mandate that termination of parental rights be carried out only where there is clear and convincing evidence justifying that result, as well as the requirement that termination proceedings and termination statutes be strictly construed in favor of the parent, it follows that—in parental-rights termination cases—Rule 193.6(a)'s

10

exceptions should also be strictly construed in favor of the parents and against the Department.[4]

Accordingly, the purposes for that rule must be interpreted in light of the unique character of

parental-rights termination cases.[5]

### 2. Did Mother Preserve Her Objections for Appeal?

Initially, the Department argues that Mother waived her objections to the majority of its

witnesses by failing to object to those witnesses when they were called to testify. Accordingly,

we must first determine whether Mother has preserved her objections to the Department's

witnesses.

Mother filed a motion in limine wherein she asked the trial court to prohibit the Department

from calling any fact or expert witnesses to testify if those witnesses were not timely and properly

disclosed pursuant to discovery requests. However, at the hearing on that motion, Mother's

counsel argued:

> Your Honor, my issue with this is the Department did not timely -- they didn't
> respond at all to my request for disclosures. And with regard to their witness list, I
> would represent to the Court that they didn't timely file any information with regard

---

[4]As we noted in *K.D.*,

> although "due process considerations [do] not require us to set aside our procedural rules" and even
> though "[t]he [Department] has an interest in the economical and efficient resolution of parental-
> rights termination cases[,] . . . [t]he [Department's] interests in economy and efficiency pale in
> comparison to the private interests at stake, and to the risk that a parent may be erroneously deprived
> of his or her parental rights and the child may be erroneously deprived of the parent's
> companionship. . . ."

*K.D.*, 471 S.W.3d at 168 (quoting *In re M.S.*, 115 S.W.3d 534, 546, 548 (Tex. 2003)).

[5]We only consider this factor in the context of parental-rights termination cases and in light of the significant
constitutional interests at stake in those cases. We express no opinion about whether the same result would be required
in any other civil case.

11

to an expert in general.  So I'd ask that they be excluded, which would go to all of seven from any -- any experts.[6]

She further argued,

> Additionally, Your Honor, I would put forth to the Court, when the Department responded to my interrogatories, they were not verified for signing.  So I would ask they be precluded from calling any witnesses in general, as they did not properly disclose their witnesses in response to discovery in regard to Rule 197.

In response, the trial court stated, "Your objection is overruled.  If you have any specific surprise by a specific witness, you can bring that to my attention at the time that the witness is called."  The trial court further stated,

> Okay.  I'm going to deny that.  If there's something that's a surprise or anything else you want to have specifically brought to my attention, otherwise your point is preserved by the Court's ruling on this. . . . Otherwise, you need to bring it to my attention if you think it's something that was not included in the discovery that you say was not done in compliance.

---

[6]Counsel for Mother further explained,
> Our discovery for Respondent Mother was forwarded to the Department . . . May the 26th.  An extension was granted, and then the discovery responses were still not tendered until well over a month and a half after the responses were due.  When the responses were sent, requests for disclosures were sent, requests for production and inspection were sent, requests for interrogatories were sent.  The responses that were received, there were no disclosure responses received.  As previously stated, the interrogatory responses that were received, there was no style of the case, there was no signature, no verification; therefore, we would show to the Court that's not a proper and actual response.
>       With regard to the request for production of documents, there was no written response of that production sent.  So, we would argue that there was no actual, formal response to requests for production.  And I do believe that the Code specifically sets out that the failure to disclose and timely disclose an expert is a strict bar to that expert testifying.

The Department responded,
> [D]iscovery was given to the Respondent and that the 584 pages are discoverable.  They had all of the information necessary.  Not every expert is in the care and control of the Department, so we did provide for our experts.  And, further, I did not receive those requests personally.  They were sent over.  I was not the attorney of record at the time, so I did send over based on what I knew was missing at the time.

12

On the other hand, during the course of the hearing on Mother's motion, the trial court also stated, "If they call an expert, I'll hear your objection, the request for a hearing outside the presence of the jury at that time." The trial court also stated that it intended "to hear the objections to the witness at the time, as opposed to . . . addressing a limine at this time." Based on these statements from the trial court, the Department argues that the trial court merely made a ruling on a motion in limine—which does not preserve error—and that Mother waived her objections by failing to object to the witnesses at the time they were called. We disagree.

At trial, the Department called the following witnesses, in addition to Mother and Father: (1) Joseph Stephens, (2) Christopher Kitts, (3) Crystal Wrape, (4) Tracy Howell, (5) Andrea Scoggins, (6) Amanda McDonald, and (7) J.K. Mother did not object to Father, Stephens, Wrape, and McDonald at the time they were called to testify. She did object, however, when Kitts, Howell, Scoggins, and J.K. were called to testify.[7] The trial court permitted those four aforementioned witnesses to testify over Mother's objection. Accordingly, as to Kitts, Howell, Scoggins, and J.K., Mother did preserve error. Under Rule 193.6(a) Mother could not object to her own testimony or to the testimony of Father or Wrape. *See* TEX. R. CIV. P. 193.6(a), (holding that nonresponding party may not introduce "the testimony of a witness (other than a named party) who was not timely identified"). Thus, the question remaining is whether Mother preserved error as to Stephens' and McDonald's testimony.

---

[7]Mother objected on the basis that the foregoing witnesses were not timely disclosed in response to discovery. On appeal, the Department does not claim that the complained-of witnesses were timely disclosed in response to discovery.

It is true that a trial court's ruling on a motion in limine does not preserve error, and Mother's objections were raised in a motion entitled "motion in limine." *See Huckaby v. A.G. Perry & Son, Inc.*, 20 S.W.3d 194, 203 (Tex. App.—Texarkana 2000, pet. denied). Nevertheless, as we noted in *Texas-Ohio Gas, Inc. v. Mecom*, "we acknowledge that motions can be misnamed. Courts should look to the substance of a motion rather than the title to determine its nature. A motion's substance is to be determined from the body of the instrument and its prayer for relief." *Tex.-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 142 (Tex. App.—Texarkana 2000, no pet.) (citations omitted).

> In the present case, Mother's motion requested that the trial court order
>
> [t]hat the attorney for the TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, the attorney ad litem for the children, and the guardian ad litem not call as a witness any fact or expert witness not timely or properly identified and disclosed pursuant to discovery in this cause without prior leave of court. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297 (Tex. 1986).

In the case cited by Mother—*Morrow*—the Texas Supreme Court held that the trial court did not err in granting plaintiff's motion to exclude the testimony of a witness that was not timely identified in discovery. *Id*. The Texas Supreme Court held,

> The testimony was automatically excluded when H.E.B. failed to supplement its answer. It is incumbent upon the party offering the testimony to show good cause why it should be included. As no showing of good cause was made, the trial court did not abuse its discretion.

*Id*. at 298. Thus, the substance of Mother's motion was a request that the Department's witnesses be excluded unless it produced evidence demonstrating the lack of unfair prejudice. This is exactly the procedure contemplated by Rule 196.3(b).

14

Additionally, the trial court made its ruling after hearing the basis for Mother's objection and after the Department offered the same argument that it later offered when the witnesses were called. Namely, the Department argued,

> Again, Your Honor, we did submit production over to both parties, over 500 pages. Everything that was asked for was in there. It was discoverable. They could have gotten the information in there. As to the expert witnesses, we supplied the -- I believe the request was for documentation for anyone that was in the Department's control. All witnesses are not in the department's control. . . . Your Honor, I think that also goes to 196 -- I'm sorry -- 193.6 (a) 2. That discovery was given to the Respondent and that the 584 pages are discoverable. They had all of the information necessary. Not every expert is in the care and control of the Department, so we did provide for our experts. And, further, I did not receive those requests personally. They were sent over. I was not the attorney of record at the time, so I did send over based on what I was missing at the time.[8]

Accordingly, the trial court overruled Mother's objections after hearing the arguments from both parties, including the Department's attempt to establish the lack of unfair surprise or prejudice as contemplated by Rule 193.6(b). Considering (1) the substance of her motion, (2) Mother's verbal request that "[the Department] be precluded from calling any witnesses," (3) the Department's information attempting to establish the lack of unfair surprise or prejudice, (4) the manner in which the hearing was conducted, and (5) the trial court's ruling, Mother's specific request to strike the witnesses was a motion to exclude the Department's witnesses rather than a motion in limine.

It is true that the trial court told Mother, "If you have any specific surprise by a specific witness, you can bring that to my attention at the time that the witness is called" and that it intended

---

[8]Rule 194.2, which governs requests for disclosures, does not limit the Department's obligation to identify expert witnesses to only those expert witnesses who are in control of the Department. Rather, the Rule limits the Department's obligation to provide "(3) the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, [for those experts who are] not retained by, employed by, or otherwise subject to the control of the responding party." TEX. R. CIV. P. 194.2(f)(3).

"to hear the objections to the witness at the time, as opposed to . . . addressing a limine at [that] time." The trial court also stated, "I'll hear the objections at the time and see witness by witness, but I'm not going to grant anything at this time." Yet, these statements do not change the result. For one thing, that procedure would impermissibly shift the burden of proof from the Department to Mother. As noted above, the exclusion under Rule 193.6 is automatic, and the Department had the burden to establish an exception to the Rule, not Mother. *See id.*; *see also* TEX. R. CIV. P. 193.6(b).

Furthermore, Rule 103(b) of the Texas Rules of Evidence states, "**Not Needing to Renew an Objection.** When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal." TEX. R. EVID.103(b). Accordingly, having overruled Mother's objections and having indicated that her objections were preserved by the ruling, no further objections were required to preserve Mother's objections. Consequently, we find that Mother did not waive her objections to the Department's witnesses.

### 3. Did the Department Establish the Absence of Unfair Surprise or the Absence of Unfair Prejudice?[9]

#### a. Did the Department Establish the Absence of Unfair Surprise?

In the present case, the Department argued that Mother was not unfairly surprised or prejudiced by its untimely discovery answers by pointing out that it provided more than 500 pages

---

[9]Rule 193.6 states that the party failing to timely disclose witnesses "may not . . . offer the testimony of a witness (other than a named party) . . . unless the court finds that: . . . (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties." TEX. R. CIV. P. 193.6(a)(2). Therefore, the State was not barred from calling the witnesses if it established either the lack of unfair surprise or the lack of unfair prejudice.

16

of its file to Mother and that the witnesses it called at trial were identified in those documents. Essentially, the Department treated discovery in this case as if it were a criminal case—it gave Mother a copy of its file and a list of witnesses more than ten days prior to trial. Yet, this was not an instance where the Department timely answered Mother's discovery, but inadvertently failed to identify one or two witnesses. Nor did the Department fail to answer the discovery within thirty days, but then later answer it. Rather, in this case, the Department *never* answered Mother's requests for disclosure or requests for production, and it *never* provided verified answers to her interrogatories.[10]

---

[10]We note that neither the Department's trial attorney, Ms. Duncan, nor its previous trial attorney, Ms. Henderson, are responsible for the Department's failure to timely answer Mother's discovery. We also note that—given the statutory deadlines for resolving such cases—the trial court was presented with a difficult decision not of its making. Rather, the responsibility for the issues in this case results from staffing decisions made by the Department's management. At a conference outside the jury's presence, the trial court discussed the reason for the Department's untimely discovery responses with the Department's trial attorney:

> THE COURT:  Okay, Ms. Duncan, how long have you been handling the case?
> MS. DUNCAN:  I came to work here on the 18th, and I think the first --
> THE COURT:  18th of what?
> MS. DUNCAN:  I'm sorry.  Of September.  And the first time I was part of this case was during -- when I came for the pretrial, so whatever that Friday was.
> THE COURT:  Within about 30 days of today's date?
> MS. DUNCAN:  I think it was past the 30 days of the date, I believe.  Of the date that they served the discovery.
> THE COURT: No, within about 30 days of today's date --
> MS. DUNCAN:  Oh, yes.
> THE COURT:  -- is when you started on the case.
> MS. DUNCAN:  Yes, Your Honor.
> THE COURT:  And the previous attorney for the Department was?
> MS. DUNCAN:  Stacy Henderson, Your Honor[.]
> THE COURT:  And she is on family medical leave, has been for a couple of months now?
> MS. DUNCAN:  Correct, Your Honor.  She just returned, I think, on Monday.
> THE COURT:  Okay.  And as a result of, I believe, when Ms. Stacey Henderson was going out, there was no persons [sic] available by the Department because there's a shortage of manpower. They weren't going to staff anybody for this court or any of the cases.  We've had several - - well, we've had a couple of trials, and then we've had numerous hearings, and I had to make contact with somebody - - the deputy commissioner to be able to get some relief because there were cases that Motions for Continuance were asked for but could not be granted because the deadlines were in the case.  And so, it's my understanding the Department did not have the manpower.  I understand there's work that Ms. Henderson could have done prior to this time.  We now have a different person

17

The exception contemplated by Rule 193.6(a) necessarily implies a good-faith effort on the responding party to attempt to answer discovery. Otherwise, a party could completely ignore the other party's discovery requests and then argue that the lack of surprise allows them to call their witnesses and introduce other evidence. In that instance, the limited exception provided by Rule 193.6(a) would swallow the other discovery rules in the rules of civil procedure. Given the fundamental liberty interests at stake in a parental-rights termination case, a good-faith effort to answer discovery must especially be implied to Rule 193.6(a).[11]

It is true that we and our sister courts have found that parents in parental-rights termination cases were not unfairly surprised by the Department's failure to timely disclose evidence, but those cases are distinguishable. In *In re H.A.C.*, we held that the Father was not unfairly surprised by the Department's failure to timely identify its expert witness because Father had submitted to a psychological examination by the expert, the Department told the voir dire panel that it might call psychologists to testify, and Father admitted during his testimony "that he had received and reviewed the results of [the expert's] examination." *In re H.A.C.*, No. 06-16-00063-CV, 2017 WL

_____

assigned to handle the cases in this county, and I'll have the record reflect those things based on the Court's understanding of some of the history that we've had involved in this case.

Had the case been adequately staffed, we are confident that Mother's discovery would have been timely answered. And, we are not unaware of the magnitude of the Department's caseload. Yet, while the Department's failure to adequately staff this case is understandable, it cannot excuse its failure to comply with the rules of civil procedure for that reason. Otherwise, the Department would benefit from inadequate funding at the expense of Mother's and Father's fundamental liberty interests. Therefore, based on the record before us, we cannot find that the Department engaged in a good-faith effort to respond to Mother's discovery requests in this case.

[11]Although Rule 193.6(a) applies where a litigant "fails to make . . . a discovery response," that language does not include a complete failure to make any responses to any of the discovery requests, but instead applies to cases where the litigant omits a response within the responses that it did provide. TEX. R. CIV. P. 193.6(a). The conclusion that the rule implies a good-faith effort to respond is evidenced by the fact that the language "fails to make" is modified by the statement "in a timely manner." Thus the rule itself contemplates a good-faith effort to comply with the discovery requests before the exception in Rule 193.6(b) can apply.

18

604064, at *3 (Tex. App.—Texarkana Feb. 15, 2018, no pet.) (mem. op.). Yet, we also noted that the Department had answered Father's requests for disclosure, but that the copy provided to Father was missing the page that identified the expert. *Id*. at *2.

Likewise, in *In re M.H.*, the Waco Court of Appeals held that the Department's failure to identify the "general substance of [the Department's] expert['s] mental impressions and opinions" was not unfairly surprising to the mother and grandparents of the child because the expert's testimony at trial was consistent with his testimony at the fourteen-day hearing that the mother and grandparents attended. *In re M.H.*, 319 S.W.3d 137, 146 (Tex. App.—Waco 2010, no pet.). Yet, in that case, as in *H.A.C.*, the Department identified the expert in response to the mother's and grandparents' discovery, but merely failed to disclose the substance of his mental impressions. Also, in *In re E.A.G.*, the San Antonio Court of Appeals held that the Department's failure to provide the curriculum vitae and expert reports for one of its expert witnesses did not unfairly surprise mother and father where the expert witness had been identified in the Department's discovery responses. *In re E.A.G.*, 373 S.W.3d 129, 145 (Tex. App.—San Antonio 2012, pets. denied). Therefore, neither *H.A.C.*, *M.H.*, nor *E.A.G.* were cases where the Department totally failed to answer the parent's discovery requests.

A closer question is presented by *Spurck v. Texas Department of Family & Protective Services*, 396 S.W.3d 205 (Tex. App.—Austin 2013, no pet.), and *R.H. v. Texas Department of Protective & Regulatory Services*, No. 03-00-00018-CV, 2001 WL 491119 (Tex. App.—Austin May 10, 2001, pet. denied). In *Spurck*, the Department "did not respond to Spurck's [requests for disclosure], apparently believing that the trial court denied all of Spurck's discovery requests when

19

it denied Spurck's motion to compel discovery from the foster parents." *Spurck*, 396 S.W.3d at 214. In *R.H.*, the trial court sustained the Department's objections when the father attempted to call his grandparents as witnesses because the father "did not designate [his grandparents] as potential fact witnesses in response to the Department's request for disclosure." *R.H.*, 2001 WL 491119, at *8. The Austin Court of Appeals affirmed the trial court's ruling in *Spurck* allowing the witness to testify and reversed the trial court's ruling in *R.H.* which prevented the witnesses from testifying, noting that the evidence was admissible—regardless of the rules of civil procedure—because

> "in determining issues regarding the conservatorship of, possession of, and access to a child, the court's primary consideration is always the best interest of the child. Compared to the best interest of the child, technical rules of pleading and practice are of little importance in determining child custody issues." It is the court's primary interest to have as much evidence before it as possible.

*Id.* at *8 (quoting *In re P.M.B.*, 2 S.W.3d 618, 624 (Tex. App.—Houston [14th Dist.] 1999, no pet.)); *see also Spurck*, 396 S.W.3d at 215.

While we do not disagree with the Austin court regarding the importance of the best interest issue in custody cases, *Spurck* and *R.H.* were parental-rights termination cases brought by the Department, whereas the cases cited by the court in deciding *Spurck* and *R.H.* involved motions to modify conservatorship between the biological parents of the child. *See R.H.*, 2001 WL 491119, at *8; *see also Spurck*, 396 S.W.3d at 215 (citing *P.M.B.*, 2 S.W.3d at 624; *Taylor v. Taylor*, 254 S.W.3d 527, 534 (Tex. App.—Houston [1st Dist.] 2008, no pet.)).[12] Due to the significant

---

[12]In *P.M.B.*, the child's mother, Angela Nichols, moved "to be appointed joint managing conservator with the exclusive right to establish the child's domicile or, in the alternative, sole managing conservator" of the minor child that she had with the father, Michael Bruno. *In re P.M.B.*, 2 S.W.3d 618, 620–21 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The Houston Fourteenth Court of Appeals explained that, in March 1995, Nichols served Bruno with

20

differences between custody cases between biological parents and suits brought by the Department to terminate a parent's parental rights, we do not agree that the rule elevating the best-interest issue over "technical rules of pleading and practice" governs parental-rights termination cases. *Spurck*, 396 S.W.3d at 215.

In *K.D.*, we discussed the significant differences between parental-rights termination cases brought by the State, through the Department, and custody disputes brought by and between the biological parents of a minor child. *K.D.*, 471 S.W.3d at 165–66. We first noted the difference between the best-interest standards applicable to the two types of cases:

> To begin with, the best-interest issue in Section 153.002 is different from the best-interest issue in Section 161.001(2). Section 153.002 states that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002 (West. 2014). By contrast, Section 161.001(2) states that "[t]he court may order termination of the parent-child relationship if the court finds

interrogatories and requests for production and that Bruno failed to answer them. Prior to the first trial between them, the parties agreed to exchange discovery informally. *Id*. at 621. The trial court granted Nichols' motion, but then granted Bruno a new trial. *Id*.

At the second trial, "Bruno served interrogatories and requests for production on Nichols," and Nichols responded with a motion for protection and a motion for sanctions for Bruno's failure to answer her prior discovery requests. *Id*. The trial court granted Nichols' motion and ordered "that any of Bruno's witnesses or documents that would have been identified or produced in response to Nichols's unanswered discovery requests were to be excluded from evidence at trial." *Id*. During the second trial, "the trial court excluded various evidence offered by Bruno based on the sanctions order and refused Bruno's tender of a bill of exceptions." *Id*. Not surprisingly, "[a]fter trial, the court granted a modification of conservatorship whereby Nichols became the parent with the right to establish the child's domicile. . . ." *Id*. Based on the language relied upon by the court of appeals in *Spurck* and *R.H.*, the Houston Fourteenth Court of Appeals reversed the trial court's judgment and remanded the case to the trial court for a new trial. *Id*. at 624–25.

*Taylor* involved a suit by grandparents "requesting to be appointed managing conservators of their three minor grandchildren . . . in preference to the children's parents." *Taylor v. Taylor*, 254 S.W.3d 527, 530 (Tex. App.—Houston [1st Dist.] 2008, no pet.). The original attorney representing the children's father withdrew from representing him one month before trial, and father's replacement counsel did not make an appearance until the day of trial. *Id*. at 531. During the period in which he was unrepresented, the trial court held a final pretrial hearing at which father was required to tender his witness lists and exhibits to the court. *Id*. Because he was unrepresented, he did not make the required tenders. At trial, father's new counsel attempted to tender the required items, but the trial court refused to accept them and refused to allow father to call any witnesses or introduce any exhibits. *Id*. at 531–32. As in *P.M.B.*, citing the language relied upon by the court of appeals in *Spurck* and *R.H.*, the Houston First Court of Appeals reversed the trial court's judgment and remanded the case to the trial court for a new trial. *Id*. at 537.

21

by clear and convincing evidence: . . . (2) that termination is in the best interest of the child." Thus, while best interest is an element of the moving parties' proof regardless of whether the suit is brought under Chapter 153 or Chapter 161, different standards of review are applied to a trial court's best-interest finding under each chapter. *Compare In re J.F.C.*, 96 S.W.3d 256, 261, 263 (Tex. 2002) ("[T]here are two prerequisites for termination of parental rights under section 161.001. . . . The second prerequisite . . . is that termination must be in the child's best interests[,] . . . [and] [d]ue process requires the application of the clear and convincing evidence standard of proof . . . .") *with In re P.M.G.*, 405 S.W.3d 406, 410 (Tex. App.—Texarkana 2013, no pet.) ("[T]rial court's decision to modify conservatorship [should be reviewed] under an abuse of discretion standard," and "[u]nder this standard, legal and factual sufficiency are not independent grounds for asserting error, but are relevant factors in determining whether a trial court abused its discretion").

Moreover, Section 153.002 only applies to cases involving ongoing conservatorship and possession rights, neither of which are implicated in a parental-rights termination case. As the Supreme Court held in *Wiley v. Spratlan*,

> Involuntary termination of parental rights rests upon [Section 161.001 of the Texas Family Code]. . . .
>
> Suits for conservatorship, possession, and support are governed by Chapter [153] of the Family Code[,] and those matters are determined by the "best interest" test. Section [153.002]. Those proceedings are different and have different purposes from termination cases. Decrees under Chapter [153] may be modified or changed from time to time, but the parent still retains some rights in and control over a child. A termination decree, on the other hand, is complete, final, irrevocable. It divests for all time the parent and child of all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. . . . The difference in the proceedings justifies the caution with which courts have characteristically considered termination cases.

*Id.* (alterations in original) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 351–52 (Tex. 1976)).[13]

We then noted the significant difference in the State's roles in custody cases and parental-rights termination cases. Namely, in a custody dispute between the biological parents, the State acts in only one capacity—as a neutral arbiter acting through its judicial power to resolve the custody question based on what is deemed by it to be in the child's best interest. *Id.* at 169–70. By contrast, in a parental-rights termination case, the State acts in a second capacity—as the moving party through its executive power seeking the permanent termination of the parents' rights to their children.[14] *Id.* Thus, in a custody case between the biological parents, the State's concern for the

---

[13]We further noted,

> In its broadest sense, a parental-rights termination case could be said to involve conservatorship and possession because it seeks to terminate those rights. If so, then it would have been superfluous to include Section 162.001(2)'s best-interest requirement because Section 153.002's best-interest requirement would have already applied. "When the legislature passes two separate statutes on the same general subject matter, it is presumed to have done so for a particular purpose, and meaning must be given to both statutes." *Gaughan v. Nat'l Cutting Horse Assoc.*, 351 S.W.3d 408, 415 n.4 (Tex. App—Fort Worth 2011, pet. denied). Thus, Section 153.002 must be interpreted as applying only to cases where conservatorship and possession rights continue, and Section 161.001(2) applies to cases where conservatorship and possession rights are terminated. *See also Richardson v. Green*, 677 S.W.2d 497, 500 (Tex. 1984) (rejecting appellant's argument that language in former statute eliminating Supreme Court's jurisdiction in "all cases of child custody, support or reciprocal support" included "actions to terminate parental rights").

*K.D.*, 471 S.W.3d at 166 n.10.

[14]In *K.D.*, we considered whether the Texas Supreme Court's ruling in *In re Lee*, 411 S.W.3d 445 (Tex. 2013), foreclosed a best-interest review under Section 161.001(2), which governs parental-rights termination cases. *K.D.*, 471 S.W.3d at 165. In *Lee*, the Supreme Court held that Section 153.0071(e) of the Texas Family Code—which allows for mediated settlement agreements in custody disputes—"prohibits a trial court from denying 'a motion to enter judgment on [a mediated settlement agreement] based on a best interest determination.'" *Id.* We held that *Lee* does not prohibit a trial court from evaluating whether a mediated settlement agreement reached in a parental-rights termination case was in the child's best interest. *Id.* at 171. We based our decision, in part, on the significant difference between the roles of the State in child custody disputes between the biological parents and parental-rights termination cases brought by the State:

> In *Troxel*, the United States Supreme Court held that "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel* [*v. Granville*, 530 U.S. 57, 68–69 (2000)]. Thus, the United States Supreme Court found that the trial court's order compelling the mother to provide additional visitation to the child's paternal grandparents violated the mother's fundamental

best interests of the child is paramount.  In a parental-rights termination case, however, the State must be concerned with both the child's best interest and with guaranteeing the parents' rights to due process that "exists to prevent potential governmental overreach in cases involving fundamental liberty interests." *Id*. at 170 (citing *Troxel*, 530 U.S. at 65).

Consequently, given the fundamental liberty interests at stake in a parental-rights termination case, we do not believe that a parent's right to discovery under the rules of civil procedure can be disregarded simply because it is in the best interest of the child that the fact-finder have all of the information before it to make a decision.  This is particularly so where the nonresponding party is the State.  To hold otherwise would allow the State to impede a parent's defense of her fundamental liberty interests by ignoring her discovery requests and then arguing that the information should nevertheless be admitted because, "[c]ompared to the best interest of

liberty interest in the care, custody, and control of her children. *Id.* at 72–73.  Yet, as noted above, the United States Supreme Court also held in *Troxel* that "the [Fourteenth] Amendment's Due Process Clause . . . includes a substantive component that 'provides heightened protection against governmental interference with certain fundamental rights and liberty interests.'" *Id.* at 65.

Accordingly, the State's authority to review a parent's decision with respect to her children varies significantly depending upon the nature of the State's involvement.  If the State merely acts through its judicial power as an impartial tribunal presiding over a dispute between private parties concerning possession, access, visitation, and support of their child, the Constitution severely curtails the State's ability to review the parent's decision.  By contrast, if the State acts through its executive power as the moving party in a suit seeking termination of a parent's parental rights, then the State—through its judicial power—has significant discretion to review the parent's decision in order to safeguard the parent's and child's fundamental liberty interests against potential overreach by the State—through its executive power.  Thus, the Texas Supreme Court's decision in *Lee* is consistent with *Troxel* because it limits the ability of the State—through its judicial power—to review the parents' decision in a dispute between them over conservatorship, possession, and access to their child.  But that same holding cannot be reached in a parental-rights termination case because due process requires the State—through its judicial power—to safeguard the parent's and child's fundamental liberty interests against potential overreach by the State—through its executive power.
*Id*. at 171 n.15.

24

the child, technical rules of pleading and practice are of little importance. . . ." *Spurck*, 396 S.W.3d at 215. Accordingly, we find that the State failed to establish a lack of unfair surprise.[15]

### 1. Did the Department Establish the Absence of Unfair Prejudice?

In her brief on appeal, Mother argues, "[A]llowing the Department to call witnesses that were not parties to the case (i.e. Officer Kitts) or any other witnesses, other than [the] ongoing Conservatorship worker, required [Mother's] attorney to blindly prepare for the testimony of parties not designated." A distinctive feature of civil cases not found in criminal cases is the broad right to discovery, including the right to depose witnesses. Therefore, a parent in a termination case does not just have the right to see the Department's evidence in advance, she has the right to test that evidence prior to trial through the discovery tools provided by the rules of civil procedure.

For example, unlike a defendant in a criminal case, a defendant in a parental-rights termination case has the right to take depositions of witnesses and experts without leave of court after establishing good cause. *Compare* TEX. R. CIV. P. 199.2(a) ("A notice of intent to take an oral deposition must be served on the witness and all parties a reasonable time before the deposition is taken.") *with* TEX. CODE CRIM. PROC. ANN. art. 39.02 (West 2018) ("When a party desires to take the deposition of a witness, the party shall file with the clerk of the court in which the case is

---

[15]Of course, just as the best interests of the child do not trump the fundamental liberty interests at stake in a parental-rights termination case, neither do the fundamental liberty interests necessarily trump the best interests of the child. Rather, the trial court must balance the two interests. Thus, while we disagree with the court of appeals' conclusion in *Spurck* and *R.H.* that the rules of civil procedure must give way to the "best interest of the child," its reasoning that a trial court should have all available information before it to decide a question of this magnitude is valid. Therefore, while that reasoning is not determinative on the issue of whether the trial court erred in allowing the witnesses to testify, we do not foreclose the possibility that the issue would be relevant to determining whether the appellate court should remand the case for a new trial rather than render judgment for the parent in a case where it finds that the trial court's error was harmful. Because we do not find that the trial court's error in this case was harmful, we do not decide this question.

pending an affidavit stating the facts necessary to constitute good reason for taking the witness's deposition and an application to take the deposition."). Considering that termination of a parent's rights to his or her child is "complete, final, irrevocable and divests for all time that natural right as well as all legal rights, privileges, duties and powers with respect to each other except for the child's right to inherit," the parent's right to test the Department's evidence through discovery—including the right to depose witnesses—is not insignificant. *Holick v. Smith*, 685 S.W.2d 18, 20–21 (Tex. 1985).[16] Therefore, in order to establish the absence of unfair prejudice, the Department was required to establish that its untimely disclosure did not impair Mother's ability to test the Department's evidence through discovery prior to trial.[17]

---

[16]Depositions in civil cases can be used both offensively and defensively. Offensively, a party may take a deposition to preserve the testimony of a favorable witness for later use at trial. Defensively, a party uses a deposition to not only discover what the other party's witnesses will testify to at trial, but also to commit those witnesses to specific testimony and impeach them later if they change that testimony at trial. Additionally, during the course of deposing the opposing party's witnesses, a party may learn of other, favorable evidence that is worthy of further investigation. By waiting to disclose its witnesses until seventeen days before trial, which was after the discovery period had ended, the Department effectively foreclosed Mother's ability to depose its witnesses.

[17]Moreover, a parent in a parental-rights termination case has a right to effective assistance of counsel. *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). Given (1) the fundamental liberty interests at stake in parental-rights termination cases, (2) the broad discovery allowed under the rules of civil procedure, (3) the fact that depositions may be taken without leave of court, and (4) the fact that depositions allow a party to not only discover the evidence against him or her but also to uncover possible favorable evidence, the failure of a parent's trial counsel to depose any of the Department's witnesses against the parent could implicate a parent's right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984) (holding that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"). And, if a trial counsel's failure to depose any of the Department's witnesses occurred because the Department's untimely responses rendered it impossible to do so, then it would follow that the Department prejudiced the parent by making it impossible for trial counsel to render effective assistance. Consequently, in view of the fundamental liberty interests at stake in parental-rights termination cases, and the duty of counsel to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," the Department may be required to establish that a reasonable trial strategy existed that justified trial counsel's failure to depose any of the Department's witnesses in order to establish the lack of unfair prejudice by its failure to timely disclose its witnesses. *Id.* Nevertheless, because the Department failed to address this issue at all, we need not decide this question.

The Department's response did not address the issue regarding Mother's opportunity to test the Department's evidence through discovery. Rather, it merely established that Mother was aware of the evidence prior to trial. Accordingly, the Department did not establish the absence of unfair prejudice as required by Rule 193.6(b). Consequently, the trial court erred in overruling Mother's objection to the Department's witnesses.

### D. Was The Trial Court's Error Harmful?

#### 1. Introduction and Standard of Review

Mother does not identify a particular witness whose testimony she claims should have been excluded. Instead, she claims that the trial court erred in allowing "the Department to call witnesses that were not parties to the case which were not timely and properly disclosed." She further claims that, by "allowing the Department to call witnesses that were not parties to the case (i.e. Officer Kitts) or any other witnesses, other than the ongoing Conservatorship worker," she was "required . . . to blindly prepare for the testimony of parties not designated." Finally, she prays that the case be reversed and remanded for a new trial and that the trial court be ordered "to preclude the Department from calling any witness other than the conservatorship worker in this matter." It is undisputed that Wrape was the Department's conservatorship case worker in charge of this case. Accordingly, Mother only complains that the trial court erred in allowing any witness other than herself, Father, and Wrape to testify at trial.

The Texas Supreme Court has held that the test for determining whether the introduction of improperly disclosed or undisclosed witness testimony is harmless "is not whether the party propounding the interrogatory had available to it information from pretrial discovery that

27

corroborates the undesignated witness' testimony; rather, the testimony or evidence in question must be cumulative of other testimony or evidence that has been properly admitted at trial." *Jamail v. Anchor Mortg. Servs., Inc.*, 809 S.W.2d 221, 223 (Tex. 1991) (per curiam). Yet, merely establishing the presence of non-cumulative evidence from an undisclosed witness does not automatically render the trial court's error in admitting the evidence harmful: the opposing party must also demonstrate that the noncumulative evidence was consequential. *See id.* (holding that admission of noncumulative testimony from undisclosed witness regarding punitive damages was not harmful in the absence of jury finding necessary to establish plaintiffs' right to recover punitive damages). Finally, in making this evaluation, "a reviewing court must examine 'the entire record to determine whether the judgment was controlled by the testimony that should have been excluded.'" *Id.* (quoting *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989)).

Consequently, we must first determine whether the testimony from the Department's witnesses was cumulative of the testimony of Mother, Father, and Wrape. If the testimony of all of the Department's witnesses was cumulative of the testimony from Mother, Father and Wrape, then the trial court's error in admitting the witness testimony was harmless. On the other hand, if the testimony of any Department witness is in excess of the testimony of Mother, Father, and Wrape, then we must decide if the noncumulative evidence was consequential. If we determine that the noncumulative evidence was consequential, then the trial court's error in admitting the witness testimony was harmful.

28

**2.      Was the Testimony of the Undisclosed Witnesses Cumulative of the Testimony of Mother, Father, and the Department's Case Worker?**

We have reviewed the record in this case and have compared the testimony of the untimely disclosed witnesses to the testimony of the witnesses to whom Mother does not challenge. Based on our review of the record, we find that the testimony of the untimely disclosed witnesses is merely cumulative of the other testimony. Mother, Father, and Wrape testified in detail about the first CPS case, the reasons leading to the present case, the history of the present case, and the history of Mother's and Father's drug usage. Also, they testified about D.W.G.K.'s absence from school and the fact that the children had moved around several times after the first case was concluded. Their testimony covered all of the subjects testified to by the untimely disclosed witnesses. Also, while there may have been differences in the testimony, they were differences of detail and interpretation rather than differences of substance. Thus, to the extent that any additional, noncumulative information was provided by the untimely disclosed witnesses, we find that the additional information was not consequential to the case.

Accordingly, although we find that the trial court erred in failing to grant Mother's motion to strike the Department's witnesses, we also find that the trial court's error was harmless. Consequently, we overrule Mother's sole point of error.

## III.    Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:    April 25, 2018
Date Decided:      August 6, 2018