

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-26-00151-CV

———————————————————

IN THE INTEREST OF S.K. AND A.K., CHILDREN

---

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. 24-11286-16

---

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

This is an ultra-accelerated appeal[1] in which Appellant (Mother) appeals the termination of her parental rights[2] to her children S.K. (Sadie) and A.K. (Andrew),[3] based on clear and convincing evidence of three predicate grounds—endangering environment, endangering conduct, and use of a controlled substance and failure to complete a court-ordered substance-abuse treatment program—and a best-interest finding. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O), (b)(2). Mother does not challenge the sufficiency of the evidence to support the jury's termination findings. Instead, in two issues, Mother proposes a shift in the methodology for reviewing jury-charge error in parental-rights-termination cases and argues that her appointed counsel was ineffective. Because the first issue is not preserved for our review and the second issue would have required her attorney to make frivolous objections, we affirm the trial court's order of termination.[4]

---

[1]*See* Tex. R. Jud. Admin. 6.2(a) (requiring appellate court to dispose of appeal from a judgment terminating parental rights, so far as reasonably possible, within 180 days after notice of appeal is filed).

[2]The children's father's parental rights were also terminated, but he did not appeal.

[3]We use aliases to refer to the children in this proceeding. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8(b)(2).

[4]We do not include a full recitation of the background facts as they are minimally relevant to the issues raised on appeal; instead, we include pertinent facts as necessary to the disposition in the body of the opinion. *See* Tex. R. App. P. 47.1.

## I. Charge Error

In Mother's first issue, she advocates for an exception to the preservation rules for charge error in parental-rights-termination cases. Mother did not object to the jury charge during trial despite having had several opportunities to do so, and she now argues that this failure should not result in a total forfeiture of her charge challenge on appeal.[5]

"Our procedural rules state that any complaint to a jury charge is waived unless specifically included in an objection." *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) (first citing Tex. R. Civ. P. 274; and then citing Tex. R. App. P. 33.1(a)(1)). A party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling—if not apparent from the request's, objection's, or motion's context—and the trial court must rule or refuse to rule on the request, objection, or motion. Tex. R. App. P. 33.1(a). If a party fails to present a timely objection, then error is not preserved. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g).

Here, Mother made no objection to the jury charge; accordingly, any error is not preserved. *See In re R.W.S.*, No. 10-22-00353-CV, 2023 WL 3010391, at *1 (Tex. App.—Waco Apr. 19, 2023, pet. denied). Mother acknowledges this failure and proposes that we adopt separate standards for jury-charge error preservation in parental-rights-termination cases so as to "better protect the constitutional privileges of

---

[5]Mother alleges that a non-statutory definition of "endanger" was improperly included in the jury charge and was a "direct comment on the evidence."

parents whose rights are being terminated." However, even if we were persuaded by Mother's argument supporting her proposition, the Texas Supreme Court has already answered this question, holding that "our preservation law does not permit, and due process does not require, a court of appeals to review an unpreserved complaint of charge error in parental[-]rights[-]termination cases." *In re A.F.*, 113 S.W.3d 363, 364 (Tex. 2003) (citing *B.L.D.*, 113 S.W.3d 340[6]).

Because Mother failed to preserve her jury-charge complaint for review, and as her argument is in direct contradiction with the Texas Supreme Court's precedent, we overrule Mother's first issue.

## II. Ineffective Assistance of Counsel

In Mother's second issue, she alleges that her trial counsel provided ineffective assistance because she failed to adequately investigate or contest the drug-test results that allegedly formed the basis for the case against Mother.

---

[6]In *B.L.D.*, the court also considered if there were exceptions to the established procedural rules. *See B.L.D.*, 113 S.W.3d at 350. The court dismissed the use of the fundamental-error doctrine—a limited exception to procedural preservation rules when the record shows jurisdictional defect—to permit the review of unpreserved jury-charge error in parental-rights-termination cases. *Id.* at 350–51 ("We are aware of no precedent in either our criminal or civil jurisprudence that informs the court of appeals' conclusion that 'core' jury charge issues in termination cases should be reviewed even when not preserved."). The court likewise concluded that "due process does not require review of unpreserved complaints." *Id.* at 354 (holding that even balancing the parents' interest with the State's interest in protecting the best interests of the children involved, "the [l]egislature and this [c]ourt have provided heightened procedural protections in termination cases," posing a "low risk that consistently applying our preservation rules will result in erroneous deprivation").

To demonstrate that an appointed counsel was ineffective,[7] a parent must satisfy the two-pronged *Strickland* test by demonstrating (1) that trial counsel's performance was deficient and (2) that the deficient performance by trial counsel prejudiced the case. *In re M.S.*, 115 S.W.3d 534, 544–45 (Tex. 2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)); *see In re I.A.*, No. 02-24-00471-CV, 2025 WL 494696, at *3 (Tex. App.—Fort Worth Feb. 13, 2025, no pet.).

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *In re I.Z.*, No. 02-24-00354-CV, 2024 WL 4509771, at *4 (Tex. App.—Fort Worth Oct. 17, 2024, no pet.). Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *I.Z.*, 2024 WL 4509771, at *4.

An ineffective-assistance-of-counsel allegation in a termination proceeding must be firmly founded in the record, and the record must affirmatively show the alleged ineffectiveness and the resulting harm. *In re M.M.*, No. 02-21-00153-CV, 2021 WL 4898665, at *9 (Tex. App.—Fort Worth Oct. 21, 2021, pets. denied). When the record

---

[7]"[T]he statutory right to counsel in parental-rights[-]termination cases include[s], as a matter of due process, the right to effective counsel." *C.S.F. v. Tex. Dep't of Fam. & Protective Servs.*, 505 S.W.3d 618, 619 (Tex. 2016) (order).

is silent regarding counsel's reasons for doing or not doing something, we may not speculate to find that trial counsel was ineffective. *Id.* Only when the conduct was so outrageous that no competent attorney would have engaged in it can we conclude that the challenged conduct constituted ineffective assistance. *Id.* at \*8.

As evidence of trial counsel's deficient performance, Mother alleges that there is "no record of any challenge to the drug[-]test results, the qualifications of the lab technicians performing the testing, the accreditation of the lab drawing the sample, or the accreditation of the lab doing the testing." Mother claims that this violates the principles in Senate Bill 1287 of the 84th Texas Legislative Session, requiring that all forensic analysts and laboratories be licensed. *See* Act of May 29, 2015, 84th Leg., R.S., ch. 1276 (S.B. 1287), §§ 4–a(b), 4–d, 2015 Tex. Gen. Laws 4315, 4317. In its appellee's brief, the Department of Family and Protective Services points out that this bill was eventually codified into Article 38.01 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 38.01, § 4. Article 38.01 governs the Texas Forensic Science Commission generally, *see id.*, and while it includes guidelines for forensic-analyst licensing, *see id.* § 4–a, and for crime-laboratory accreditation, *see id.* § 4–d, this statute is applicable only to criminal proceedings. *See id.* art. 38.01, §§ 2(4), 4–a(a)(2), 4–d(b)(1) (all referencing the article's application to criminal actions and proceedings).

Indeed, Mother's brief—though it cites Senate Bill 1287 as the legislation that created the licensing requirement for forensic analysts and laboratories—ignores the very statute by which the bill specified the types of proceeding to which it applies.

6

Article 38.01 uses the definition of "forensic analysis" as assigned by Article 38.35. *See id.* art. 38.01, §§ 4–a(a)(1), 4–d(a). Specifically, Article 38.35—titled "Forensic Analysis of Evidence; Admissibility"—both specifically states to which type of proceeding the forensic-licensing scheme applies and those to which it does not apply. *Id.* art. 38.35.

The general rule of the article states:

> Except as provided by Subsection (e), a forensic analysis of physical evidence under this article and expert testimony relating to the evidence are not admissible *in a criminal action* if, at the time of the analysis, the crime laboratory conducting the analysis was not accredited by the commission under Article 38.01.

*Id.* art. 38.35(d)(1) (emphasis added). If Article 38.35's general rule were not clear enough in specifying that the forensic-licensing scheme applies "in a criminal action," the statute's definition of a forensic analysis reinforces the limitation in two ways. Specifically, it states: "'Forensic analysis' means a medical, chemical, toxicologic, ballistic, or other expert examination or test performed on physical evidence, including DNA evidence, for the purpose of determining the connection of the evidence to a criminal action." *Id.* art. 38.35(a)(4). The definition of forensic analysis also specifically states that "[t]he term does not include . . . an expert examination or test conducted principally for the purpose of scientific research, medical practice, civil or administrative litigation, or other purpose unrelated to determining the connection of physical evidence to a criminal action." *Id.* art. 38.35(a)(4)(F) (emphasis added). And to close the circle, Article 38.35 defines a "criminal action" in a way that does not embrace a civil parental-termination matter; the article provides: "'Criminal action' includes an

7

investigation, complaint, arrest, bail, bond, trial, appeal, punishment, or other matter related to conduct proscribed by a criminal offense." *Id.* art. 38.35(a)(2).[8]

Due to Article 38.01's applicability to criminal actions rather than civil litigation, such as parental-rights-termination proceedings, Mother necessarily fails to meet her burden under the first prong of *Strickland.* Mother's sole basis for her ineffective-assistance claim is that her trial counsel failed to properly object to the qualifications and accreditation of those involved in the drug testing and results. Mother does not point to any legal theory to support her allegation—aside from the inapplicable licensing scheme for forensic analysts and laboratories. Because that scheme is not applicable to the drug testing and results in this case, we cannot agree with Mother that trial counsel's performance was deficient when she failed to make frivolous objections to the drug-test results during trial. Indeed, Mother's argument fails because "[w]hen an ineffective-assistance claim alleges that trial counsel's performance was ineffective for failing to object to the admission of evidence, the appellant must show that the trial court would

---

[8]Appellant suggested at oral argument that the drug tests at issue should fall within the ambit of the forensic-licensing scheme because Mother's use of illicit drugs might carry criminal implications. We disagree. Parental-termination litigation is categorized as a civil matter. *See In re D.W.G.K.*, 558 S.W.3d 671, 680 (Tex. App.—Texarkana 2018, pet. denied). The fact that a civil matter may involve an imbedded criminal-law question does not transform a civil matter into a criminal-law matter. *See Tex. Propane Gas Ass'n v. City of Houston*, 622 S.W.3d 791, 798 (Tex. 2021) ("Disputes 'aris[ing] over the enforcement of statutes governed by the Texas Code of Criminal Procedure' or 'as a result of or incident to a criminal prosecution' are usually criminal[-]law matters. But the mere existence of some criminal-law question, characteristic, or context will not transform a dispute that is fundamentally civil into a criminal[-]law matter." (footnotes omitted)).

have erred in overruling the objection." *Ramlal v. State*, No. 02-24-00248-CR, 2025 WL 2007313, at*4 (Tex. App.—Fort Worth July 17, 2025, no pet.) (citing *Prine v. State*, 537 S.W.3d 113, 117–18 (Tex. Crim. App. 2017)); *see also In re J.S.S.*, 594 S.W.3d 493, 505 (Tex. App.—Waco Sept. 18, 2019, pet. denied) ("Counsel is not ineffective for failing to make frivolous arguments or undertake unreasonable courses of action." (citing *Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005))). Mother's ineffective-assistance-of-counsel argument—based on the claim that her trial counsel should have made an unavailing objection—fails.

Because Mother fails to meet the first prong of *Strickland*, we overrule Mother's second issue.

### III. Conclusion

Having overruled both of Mother's issues, we affirm the trial court's order terminating Mother's parental rights to S.K. and A.K.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: June 11, 2026

9