

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00447-CV

**THE ABADI GROUP COMPANIES, LLC**, and Elias Abadi, Gianluca Ranallo, Alan Levy,
and Melanie Levy,
Appellants

v.

**WEINRITTER ST. PAUL SQUARE, LLC**,
Appellee

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-CI-19896
Honorable Nicole Garza, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:    Lori Massey Brissette, Justice
Adrian A. Spears II, Justice
H. Todd McCray, Justice

Delivered and Filed: December 23, 2025

MOTION GRANTED IN PART, DENIED IN PART; REMANDED IN PART

Before us is appellant Elias Abadi's motion to review the trial court's: (1) order sustaining

appellee Weinritter St. Paul Square LLC's contest to Abadi's net worth affidavit, increasing the

amount of the supersedeas bond; (2) order granting Weinritter post-judgment injunctive relief;

(3) ruling denying his videoconference/continuance motion; and (4) ruling excluding his expert

and documentary evidence. After reviewing the parties' filings, we grant in part and deny in part

the motion, and remand in part as to the injunction order for further proceedings consistent with this opinion and order.

**RELEVANT BACKGROUND ON THE MOTION**[1]

Abadi filed his supersedeas bond, along with a statement of net worth on March 11, 2025. Weinritter contested the net worth affidavit and requested an injunction on March 19, 2025. Following discovery and a May 14, 2025 contest hearing, the trial court sustained Weinritter's contest and issued an injunction that same day, and, on June 2, 2025, issued an order sustaining Weinritter's net worth contest setting the supersedeas bond at $1,024,171.52. Following the orders, Abadi filed the pending motion—which he supplemented—Weinritter filed a response, and Abadi then filed a reply.

**MOTION TO APPEAR VIA VIDEOCONFERENCE OR FOR CONTINUANCE**

Abadi argues the trial court abused its discretion when it denied his motions to appear via videoconference or, in the alternative, his motion for continuance. Weinritter argues Abadi's contentions are not reviewable because they are not one of the enumerated bases for appellate review found in Texas Rule of Appellate Procedure 24.4(a) but concedes they may be reviewable by mandamus. Abadi asks that we construe his motions as a mandamus petition to the extent we do not find the motions are reviewable under Rule 24.4(a).

The limited scope of our Rule 24.4(a) review does not include ancillary motions like a motion to appear via videoconference or a motion for continuance. *See, e.g.*, TEX. R. APP. P. 24.4(a)(1)–(5) (providing our limited Rule 24.4(a) review includes: (1) the sufficiency or excessiveness of the amount of security; (2) the sureties on a bond, (3) the type of security, (4) the

---

[1] The facts of this case are more fully set forth in our previous opinion addressing a separate supersedeas bond; we do not restate them here. *See* TEX. R. APP. P. 47.1; *Abadi Group Companies, LLC v. Weinritter St. Paul Square*, LLC, No. 04-24-00447-CV, 2025 WL 1452566, at *1–2 (Tex. App.—San Antonio May 21, 2025, no pet.) (mem. op.).

determination whether to permit suspension of enforcement, and (5) the trial court's exercise of discretion in ordering the amount and type of security and deciding the sufficiency of sureties); TEX. CIV. PRAC. & REM. CODE § 52.006(d) (same); *Senior Care Living VI, LLC v. Preston Hollow Capital, LLC*, 695 S.W.3d 446, 455 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (providing appellate court may engage in limited review of supersedeas ruling based on Rule 24.4(a) enumerated issues); *Ahlgren v. Ahlgren*, No. 13-22-00029-CV, 2022 WL 1260190, at *3 (Tex. App.—Corpus Christi–Edinburg Apr. 25, 2022, no pet.) (mem. op.) (same). Accordingly, we decline to consider Abadi's contentions as a part of our Rule 24.4(a) review. *See* TEX. R. APP. P. 24.4(a); 47.1.

However, we may, as Abadi suggests, consider both issues via mandamus, and review the trial court's actions for a clear abuse of discretion. *See, e.g.*, *Mitschke v. Borromeo*, 645 S.W.3d 251, 260 (Tex. 2022) ("Texas law greatly favors resolving litigation on the merits rather than on procedural technicalities."); *In re Villanueva*, No. 04-24-00030-CV, 2024 WL 350599, at *1 (Tex. App.—San Antonio Jan. 31, 2024) (orig. proceeding) (mem. op.) (per curiam).[2]

Here, the trial court did not clearly abuse its discretion by denying the motions. On May 7, 2025, the trial court contacted counsel setting a hearing on Weinritter's contest for May 14, 2025. Abadi filed his videoconference/continuance motions the following day. Abadi followed up the day before the hearing and was told the court had already stated that all parties and witnesses were required to attend in person.

At the hearing, the court noted Abadi had not properly appeared and denied both motions. During the hearing, counsel for Abadi explained his client was in attendance via videoconference.

---

[2] Under this standard, the trial court's actions are a clear abuse of discretion if its decision is so arbitrary or unreasonable that it amount to a "clear and prejudicial error of law." *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002).

However, the court reiterated that it had ordered Abadi to be present to testify and to be cross-examined that day, noting he had more than three days' notice and pointing to the local rules that do not allow videoconference attendance for hearings longer than one-and-a-half hours. The court also explained it "it was no surprise" to Abadi that he had to appear in person, because emails exchanged with the parties showed Abadi knew he was required to attend in person. Counsel for Abadi did not deny this. The court added "[t]here are continuances, after continuances, . . . and this Court's patience has been tried over . . . and over again."

Because the trial court's ruling was not arbitrary or unreasonable, Abadi's point of error as to the trial court's denial of his motion to appear via videoconference or, in the alternative, for a continuance, is overruled.

## THE EXCLUSION OF ABADI'S EVIDENCE

Abadi contends the trial court erred when (1) it excluded his expert witness from testifying and (2) excluded his documentary evidence from consideration.[3] We disagree.

### A. The Exclusion of Abadi's Expert

Abadi designated his expert, S. Todd Burchett, to testify regarding his statement of net worth on May 8, 2025—five days before the hearing. However, he amended this disclosure *the day before* the hearing to explain that the expert's mental impressions and opinions would also be based on his interview of Abadi.

---

[3] Weinritter again argues Abadi's contentions are not reviewable as a matter falling within Rule 24.4(a) of the Texas Rules of Appellate Procedure. But the scope of our Rule 24.4(a) review includes a review of the evidence filed by the parties in connection with a net worth contest. *See, e.g.*, TEX. R. APP. P. 24.2(c); 24.4(a), (d). And because this review includes the review of the evidence, it necessarily includes a review of the trial court's orders excluding any such evidence. *See White v. Pottorff*, No. 05-14-00675-CV, 2015 WL 302810, at *3 n.2 (Tex. App.—Dallas Jan. 23, 2015, no mandamus filed) (mem. op.) (rejecting contention trial court erred by refusing to admit into evidence net worth affidavit and admitting testimony of income earned).

Weinritter moved to exclude Abadi's expert. At the hearing, it argued the supplement—which clarified the expert would be testifying regarding his opinions based on an interview with Abadi—was an effort to undermine its ability for cross-examination of Abadi and the expert or to rebut the expert, and to use the expert as a mouthpiece to introduce Abadi's testimony because Abadi knew he would not attend the hearing in person. Weinritter also noted this was a part of a continuing pattern for Abadi, as Abadi also had previously refused to attend court and give testimony four times.[4] Abadi's counsel conceded, based on the trial court's questions, that Weinritter had not been made aware of the expert's opinion at the time of Abadi's initial deposition. The trial court thereafter granted the motion to exclude, explaining Abadi was expecting Weinritter to have been "able to cross-examine [Abadi] on an [expert] opinion that he did not yet have" because the disclosure that the expert's opinions were based on an interview with Abadi was not made until the eve of the hearing.

We review a trial court's exclusion of an expert witness for an abuse of discretion. *See, e.g.*, *Cincinnati Ins. Co. v. Villanueva*, No. 04-20-00389-CV, 2022 WL 608962, at *9 (Tex. App.—San Antonio Mar. 2, 2022, pet. denied) (mem. op.). To show reversible error, Abadi must prove: (1) the trial court erroneously excluded the evidence and (2) the excluded evidence was controlling on a material issue and not cumulative of other evidence. *See id.* at *4 (providing reviewing court obligated to uphold ruling excluding expert testimony if any legitimate basis in record for ruling); *see also State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009).

Parties have a duty to amend and supplement expert disclosures pursuant to Rule 193.5 of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 193.5(a), 195.6. An amended or supplemental

---

[4] Weinritter further observed Abadi was attempting to avoid appearing in San Antonio and made his deposition by Weinritter in San Antonio contingent on not being served with process while in town. In connection with Weinritter deposing Abadi, the parties both addressed a shouting match between counsel at the offices of Abadi's counsel.

response must be made reasonably promptly after the party discovers the necessity for such a response and, unless otherwise provided in the rules, an amendment or supplementation made less than thirty days before consideration of the issue is presumed not reasonably prompt. *See* TEX. R. CIV. P. R. 193.5(b). Here, it is clear that the initial expert designation was not reasonably prompt, as it was made long after the motion was filed, only after the hearing was set and just five days before it was to be held. The eleventh-hour supplementation, as well, was not timely as it was made only after Abadi had already indicated he would not be able to attend the hearing. *See* TEX. R. CIV. P. 193.5, 195.6.

In general, a trial court does not erroneously exclude evidence if a party fails to timely supplement an expert designation. *See Cincinnati Ins. Co.*, 2022 WL 608962, at \*4; *see also* TEX. R. CIV. P. 193.6(a); *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009). Indeed, exclusion is mandatory and automatic unless the court finds there was good cause for the failure to timely amend or supplement, or the untimely failure will not unfairly surprise or prejudice the other party. *See Cincinnati Ins. Co.*, 2022 WL 608962, at \*4; *see also* TEX. R. CIV. P. 193.6(a).[5] The purpose of this rule is to, among other things, prevent trial by ambush and to give the other party the opportunity to prepare a rebuttal to the expert testimony. *See In re D.W.G.K.*, 558 S.W.3d 671, 680 (Tex. App.—Texarkana 2018, pet. denied).

Abadi did not demonstrate good cause for the failure to timely amend or supplement, or show the untimely designation and supplementation would not unfairly surprise or prejudice Weinritter. *See* TEX. R. CIV. P. 193.6; *Henriquez v. Burton*, No. 01-23-00605-CV, 2025 WL 2044548, at \*7 (Tex. App.—Houston [1st Dist.] July 22, 2025, no pet.) (mem. op.) (rejecting

---

[5] The record supporting the trial court's finding may include evidence, but it also may include counsel's undisputed representations. *See Jackson v. Takara*, 675 S.W.3d 1, 6 (Tex. 2023).

contention trial court erred by excluding expert testimony because, among other things, party made no showing of good cause for not timely designating expert as expert witness and did not otherwise demonstrate lack of unfair prejudice); *McRay v. Dow Golub Remels & Gilbreath PLLC*, No. 01-21-00032-CV, 2022 WL 17981671, at *6 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, pet. denied) (mem. op.) (same). Indeed, Abadi said nothing about good cause at all. *See* TEX. R. CIV. P. 193.6; *Henriquez*, 2025 WL 2044548, at *7. Abadi did not deny that the expert was designated late or that the amendment or supplement was made extremely late, nor did Abadi contend it was the result of an accident or mistake. *See Wheeler*, 157 S.W.3d at 442.

Instead, Abadi argued there would be no surprise or prejudice to Weinritter because (1) the expert could be cross-examined, (2) some of the documents forming the basis of the expert's testimony were available to Weinritter much earlier, and (3) some of the same subject matter covered by the expert was covered when Abadi was deposed. Although some documents were available to Weinritter earlier, Weinritter was not told about the expert until a few days before the hearing. And as Abadi concedes, his expert, did not just repeat information from Abadi for his expert opinion but intended to explain his analysis, methodology, independent opinions, and even the minor deviations between Abadi's and his net worth calculation. In other words, Weinritter had no genuine opportunity to prepare a rebuttal to the expert testimony or to even cross-examine the expert or Abadi as to what he told the expert and upon which the expert intended to testify. *See D.W.G.K.*, 558 S.W.3d at 680. Moreover, given Abadi's history of avoiding post-judgment discovery as identified by the trial court in its orders and during the hearing and the fact that the interview with Abadi was disclosed the day before the hearing—a tactic that smacks of gamesmanship and trial by ambush—the court was entitled to be skeptical of Abadi's contentions

- 7 -

of no unfair surprise or prejudice. *See* TEX. R. CIV. P. 193.6(a); *Cincinnati Ins. Co.*, 2022 WL 608962, at \*4; *D.W.G.K.*, 558 S.W.3d at 680.

We therefore conclude the trial court did not err by prohibiting Abadi's expert from giving expert opinion testimony and cannot conclude the trial court abused its discretion in excluding the expert testimony. *See Henriquez*, 2025 WL 2044548, at \*7; *McRay*, 2022 WL 17981671, at \*6. Accordingly, Abadi's point of error is overruled.

### B. The Exclusion of Abadi's Documentary Evidence

Abadi moved to introduce thirteen exhibits as evidence, ten of which Weinritter objected to as hearsay. The exhibits included (1) business records, (2) government records, (3) out-of-state court records, and (4) a vehicle "statement." The trial court sustained Weinritter's hearsay objections to the ten exhibits, agreeing with Weinritter that Abadi did not provide anyone who could authenticate the documents and did not otherwise include a business records affidavit.[6] Abadi contends the trial court erred when it excluded his exhibits. We disagree.

#### 1. Business Records

The business records included a series of account statements and an airline receipt email. Abadi argues the records were admissible pursuant to Rule 803(6) of the Texas Rules of Evidence. Rule 803(6) of the Texas Rules of Evidence requires that the testimony of a custodian or another qualified witness, live or by an "affidavit or unsworn declaration" complying with Rule 902(10), demonstrate that business records meet the requirements of the rule. TEX. R. EVID. 803(6). Rule

---

[6] The court admitted Abadi's other exhibits including the net worth affidavit, the combined financial statements for Abadi Group LLC, which includes member equity, as well as a promissory note for which Abadi is a borrower and guarantor.

902(10) provides a business record is self-authenticating if it is accompanied by an affidavit meeting subsection (10)'s service and form requirements.[7] TEX. R. EVID. 902(10)(A)–(B).

Abadi does not dispute that he offered no live witness and no affidavit or unsworn declaration complying with Rule 902(10). Instead, he implies he would have offered such testimony through Abadi as a qualified witness, satisfying the rule. But as Abadi acknowledges, the trial court denied his videoconference/continuance motion, and we have already concluded the trial court committed no abuse of discretion by denying it. We therefore need not consider this contention further. *See* TEX. R. APP. P. 47.1. Accordingly, we cannot conclude the trial court abused its discretion by excluding the account statements or the airline receipt. *See Cincinnati Ins. Co.*, 2022 WL 608962, at *4, *9.

### 2. Government Records

The government records included Exhibit 5—a deed for a New Jersey property and a property assessment—and Exhibit 7—Abadi's 2024 U.S. individual tax return and IRS notices regarding unpaid tax liability. Abadi contends the property records in exhibit 5 were admissible because the deed is a public record, citing Rules 803(8) (public record). *See* TEX. R. EVID. 803(8). He further argues the property assessment was a document affecting an interest in property and/or was a statement in a document that affected an interest in property, citing Rules 803(14) and 803(15). *See* TEX. R. EVID. 803(14), (15). Weinritter contended at the hearing the deed record was labeled "not a certified copy," and the assessment was little more than a tax assessors mail postcard summary certificate to Abadi's home. In his offer of proof, Abadi identified the deed as from Monmouth County, New Jersey records, showing Abadi and his spouse as mortgagees. The exhibit also included a postcard from the Assessor's Office of the Boro of West Long Branch, New Jersey,

---

[7] *See* TEX. R. EVID. 902(10)(A), (B).

showing the assessment total of the property in question. The trial court nevertheless sustained Weinritter's objection.

To authenticate a public record or a record or statement of documents affecting an interest in property, the proponent must produce sufficient evidence supporting a finding that it is what the proponent claims it is. TEX. R. EVID. 901(a). For a public record, certified copies of such documents are self-authenticating. TEX. R. EVID. 902(4). As Abadi concedes, nothing in the record demonstrated they were self-authenticating. *See* TEX. R. EVID. 902(4).

This requirement may also be met by providing evidence, including evidence within the document itself, that the document was filed in a public office as authorized by law or that it is from the office where such things are kept. TEX. R. EVID. 901(b)(7)(A)–(B); *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020). Abadi identified Exhibit 5 in his offer of proof as (1) a deed recorded as an official public record in Monmouth County, New Jersey records showing the property is 129 Beechwood Avenue, and that Abadi and his spouse are mortgagees, and (2) a property assessment that came from the Assessor's Office of the Boro of West Long Branch, New Jersey, showing that 129 Beechwood Avenue has a 2025 assessment total of $1,397,700.

Here, taken together, the offer of proof appears to show the deed and the assessment contain internal indicia of reliability to show they are authentic New Jersey public records. *See Fleming*, 610 S.W.3d at 21. The contents and the substance of the documents—including that they show the ownership of the property, where the property is located, the fact that the records are from the same locale, and the fact that the deed included a watermark stating "not a certified copy—are evidence the records were recorded or filed in a public office as authorized by law or are from the office where items of this kind are kept. *See* TEX. R. EVID. 901(b)(4), (b)(7); *Fleming*, 610 S.W.3d at 21 (concluding trial court properly admitted documents where plaintiffs did not complain documents

faked, forged, or altered, but instead only complained were not certified copies because appearance, contents, substance, and other distinctive characteristics, together with all the circumstances suggested they were authentic and explaining "uncertified copy" of public record "could itself contain sufficient evidence that it was filed or kept in a public office" including watermark indicating copy was unofficial copy). Weinritter never contended the documents were faked, altered, or forged. *See Fleming*, 610 S.W.3d at 21. The trial court therefore erred by denying the admission of exhibit 5.

But such error is only reversible if we further conclude it probably caused the rendition of an improper order—because the trial court's decision turned on the exclusion of the evidence—or probably prevented the appellant from properly presenting the case before us. *See* TEX. R. APP. P. 44.1(a); *See Cincinnati Ins. Co.*, 2022 WL 608962, at *9 n.2; *see also Citibank (S. Dakota), N.A. v. Tate*, No. 01-09-00320-CV, 2010 WL 5117466, at *4 (Tex. App.—Houston [1st Dist.] Dec. 16, 2010, no pet.) (mem. op.) (providing evidentiary rulings do not usually cause reversible error unless appellant demonstrates judgment turned on particular evidence). Exclusion of evidence is likely harmless if the evidence is cumulative, i.e., that the error likely made no difference. *See Gunn v. McCoy*, 554 S.W.3d 645, 668 (Tex. 2018).

Here, the exclusion of such evidence is harmless. The property in question was listed as an asset on Abadi's net worth affidavit, and Abadi contended he had a negative net worth. The trial court's exclusion of such records therefore would have only resulted in a reduction of Abadi's assets as compared to his liabilities, resulting in a higher negative net worth. The trial court's decision therefore did not turn on the exclusion of the evidence.[8] *See* TEX. R. APP. P. 44.1(a);

---

[8] Exhibit 6 includes a chart by Abadi listing three vehicles and their purported Bluebook values. Even assuming the trial court erred when it excluded exhibit 6, any such error would be harmless for the same reason. *See* TEX. R. APP. P. 44.1(a), 47.1; *Gunn*, 554 S.W.3d at 668.

*Cincinnati Ins. Co.*, 2022 WL 608962, at *9; *Citibank (S. Dakota), N.A.*, 2010 WL 5117466, at *4. Moreover, at the hearing, and in its findings, the focus was on the weight to be accorded the net worth affidavit based on Abadi's credibility, and whether the calculations in the affidavit—derived from the combined financial statements and the promissory note between Abadi, his brother, and a third-party—reflected proper calculations pursuant to generally accepted accounting principles (GAAP).[9] *See* TEX. R. APP. P. 44.1(a); *Cincinnati Ins. Co.*, 2022 WL 608962, at *9; *Citibank (S. Dakota), N.A.*, 2010 WL 5117466, at *4.

### NET WORTH CONTEST AND SUPERSEDEAS BOND AMOUNT

Abadi argues the trial court abused its discretion by sustaining Weinritter's net worth contest, failing to state his net worth, failing to provide the factual basis for the court's determination of his net worth, and "predetermining" his affidavit was insufficient based on his history prior to the hearing. We disagree.

### A. The Net Worth Contest

At the contest hearing, the trial court was required to consider whether, based on credible evidence, Abadi's assets and liabilities were accurately listed in the affidavit and whether the affidavit ultimately contained complete, detailed information "from which net worth can be ascertained." *See* TEX. R. APP. P. 24.2(c); *Newsome v. N. Tex. Neuroscience Ctr., P.A.*, No. 08-09-00025-CV, 2009 WL 3738504, at *5 (Tex. App.—El Paso Nov. 9, 2009, no mandamus filed) (mem. op.) (providing trial court has discretion to consider whether assets and liabilities listed by party are accurate in light of all evidence). That is precisely what it did. Abadi voluntarily elected not to attend the hearing in person, and as we have already concluded, the trial court did not abuse its

---

[9] Any error by the trial court in excluding exhibits 6, 7, and 11 (series of court documents in New Jersey court case showing Abadi allegedly owed a debt of $87,203.60) would be harmless for the same reason. *See* TEX. R. APP. P. 44.1(a), 47.1; *Gunn*, 554 S.W.3d at 668.

discretion in denying his videoconference/continuance motion.[10] Moreover, the evidence that was admitted contained significant gaps singled out by the trial court directly relating to Abadi's failure to provide complete detailed information for the court to determine his net worth. Abadi presented no evidence other than his own statements, which the court did not credit, that his valuations were calculated in accordance with GAAP. Specifically, the affidavit failed to provide complete, detailed information to value Abadi's ownership interest in "Abadi Group Business Equity"; and Abadi failed to present admissible evidence his "net equity" calculation as to the "Abadi Group Business Equity" valued his interests in the two underlying New Jersey limited liability companies, consistent with GAAP, or any admissible evidence that the use of net equity to value the business by affidavit is permissible, or required, under GAAP. The trial court was also entitled to weigh, and did weigh the non-affidavit exhibits it did admit: the combined financial statements and the promissory note. It found their reconciliation with the calculations in the affidavit not credible. Considering the dearth of evidence, it was reasonable for the trial court to question whether Abadi's affidavit contained complete, detailed information from which his net worth could be ascertained. *See Bishop Abbey Homes, Ltd. v. Hale*, No. 05–14–01137–CV, 2015 WL 4456209, at \*5 (Tex. App.—Dallas July 21, 2015, no pet.) (mem. op.); *Newsome*, 2009 WL 3738504, at \*5.

Furthermore, the trial court was entitled to accord little weight or credibility to the affidavit based on Abadi's history before the court. *See, e.g.*, *Bishop Abbey Homes, Ltd.*, 2015 WL 4456209, at \*1 (trial court sole judge of witness credibility and weight to be given testimony); *Senior Care Living VI, LLC*, 2023 WL 3220936, at \*6; *see also Emeritus Corp. v. Ofczarzak*, 198 S.W.3d 222, 227–28 (Tex. App.—San Antonio 2006, no mandamus filed) (for Rule 24.2(d) injunction, trial court may base decision on evidence heard over course of multiple proceedings).

---

[10] Nor did he seek to admit his deposition by Weinritter.

Based on the foregoing evidence and the trial court's reasoning, we cannot conclude the trial court abused its discretion by determining it could not state Abadi's net worth. *See* TEX. R. APP. P. 24.2(a)(1); *Moss*, 2024 WL 5116975, at \*2; *Tex. Black Iron, Inc.*, 2020 WL 10231117, at \*8; *AME & FE Inv., Ltd. v. NEC Networks, LLC*, 582 S.W.3d 294, 297 (Tex. App.—San Antonio 2017, no mandamus filed). We therefore cannot conclude the trial court abused its discretion in sustaining Weinritter's net worth contest. *See* TEX. R. APP. P. 24.2(c)(3).

### B. Pre-Judgment Interest in the Supersedeas Bond

Abadi argues the trial court erroneously included prejudgment interest in the supersedeas amount, and Weinritter agrees, asking us to reform the bond amount to exclude it. Here, the trial court set the bond at $1,024,171.52 which the order provides includes compensatory damages, the costs awarded in the final judgment, "and post-judgment interest at the annual rate of 7.2% on the compensatory damages superseded by this order for the two-year estimated duration of the appeal." For a money judgment, the bond, deposit, or security amount must equal the sum of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment. TEX. R. APP. P. 24.2(a)(1); see TEX. CIV. PRAC. & REM. CODE § 52.006(a). The trial court's order clearly sets forth its basis consistent with the Rules, plainly excludes prejudgment interest, and Abadi does not specifically identify how the trial court erroneously included prejudgment interest. Nor does Abadi challenge the order on any other basis. *See* TEX. R. APP. P. 38.1(i). We therefore overrule this issue.

### RULE 24.2(d) INJUNCTION

The trial court also granted Weinritter's request for an injunction, which (1) enjoined Abadi from making any asset transfers for less than fair value, but permitting asset transfers for fair value in the normal course of business; (2) enjoined Abadi from making any payments and/or

transferring any funds to insiders/affiliates in excess of $500.00 per month, but permitting transfers for fair value in the normal course of business; and (3) ordered Abadi and the Abadi Group (TAG) to provide Weinritter with monthly reports showing all amounts paid to insiders/affiliates—and all transfers of funds and/or other assets—exceeding $10,000.00 beginning on June 1, 2025.[11]

Abadi argues the trial court abused its discretion because the trial court's findings are unsupported by evidence. *See Tex. Custom Pools, Inc. v. Clayton*, 293 S.W.3d 299, 314 (Tex. App.—El Paso 2009, mandamus denied) (abuse of discretion). Here, based on the record evidence and the trial court's reasoning, we cannot conclude the trial court abused its discretion in ordering the post-judgment injunction. *See Emeritus Corp.*, 198 S.W.3d at 227–28 (trial court abuses its discretion in ordering post-judgment injunction if *only* reasonable decision that could be drawn from evidence is judgment debtor would not dissipate or transfer its assets).

Unlike the previous supersedeas challenge in this case by TAG—where *no evidence* was presented or identified by the trial court and its findings were vague, at best, as to the nature of the evidence relied upon to impose its injunction—the trial court here plainly sets forth its reasoning. *Cf. Abadi Group Companies*, 2025 WL 1452566, at *7. The court believed Abadi might attempt to dissipate or transfer assets to avoid satisfaction of the judgment based on the history of the case, Abadi's previous actions to obstruct post-judgment discovery, and the evidence, including the net worth affidavit, the combined financial statements, and the promissory note. *See Emeritus Corp.*, 198 S.W.3d at 227–28 (for Rule 24.2(d) injunction, trial court must base decision on proof, but such proof may include evidence it heard over the course of pre-judgment proceedings to the extent such evidence supports the injunction). Specifically: (1) the jury's finding Abadi committed theft

---

[11] The reports were required to include as to each transfer: the date, amount, transferee, and copies of all supporting documentation.

and participated in a money-laundering scheme; (2) Abadi failed to turn over relevant underlying post-judgment discovery to support his net worth affidavit, (3) Abadi planned to transfer $20,000 a month to an insider for the purchase of the insider's interest, a matter that came to light only later, and which Abadi also claimed was a transaction in the normal course of *TAG's* business; (4) Abadi's admitted false statements under oath claiming a mechanic's lien; (5) Abadi's refusal to comply with a trial court order to appear at the hearing; (6) Abadi's role in the control of TAG and TAG's inability to account for the funds it received from Weinritter along with TAG's transfers to insiders and to overseas vendors in excess of the amount due; (7) Abadi's pattern of using the supersedeas process to avoid discovery of post-judgment transfers; and (8) the fact that the combined financials show TAG is required to make a distribution to Abadi in the amount of $1.3 million, but it is not reflected on Abadi's affidavit. *See Tex. Custom Pools, Inc.*, 293 S.W.3d at 314; *Emeritus Corp.*, 198 S.W.3d at 227–28. The trial court was entitled to rely on this proof in imposing its injunction. *See Emeritus Corp.*, 198 S.W.3d at 227–28.[12]

However, Abadi is correct the injunction is overly broad because it (1) enjoins TAG and (2) because the definition of enjoined parties included "those people in active concert or participation with [Abadi] who receive actual notice of the order." Pursuant to Rule 24.4(d), we order the trial court, on remand with respect to prejudgment interest, to modify the injunction to revise enjoined parties to eliminate "those people in active concert or participation with them who receive actual notice of the order by personal service or otherwise" and to remove the injunction with respect to TAG in paragraph 2.c. of section "2.0" of the trial court's May 14, 2025 order. Abadi's point of error is otherwise overruled.

---

[12] Abadi contends the injunction interferes with his normal course of business. But the injunction, consistent with the Rule, plainly provides it shall not interfere with his normal course of business. *See* TEX. R. APP. P. 24.2(c).

**CONCLUSION**

Accordingly, Abadi's motion is granted in part as to the May 14, 2025 injunction order, and, in accordance therewith, we remand in part to the trial court for the limited purpose of modifying the injunction order to:

1.  revise the definition of "enjoined parties" to eliminate "those people in active concert or participation with them who receive actual notice of the order by personal service or otherwise" and

2.  remove the reference to "TAG" in paragraph 2.c. of section "2.0."

Abadi's motion is otherwise denied.

Lori Massey Brissette, Justice